Filed 8/10/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CURCI INVESTMENTS, LLC, | |
| Plaintiff and Appellant, | G052764 |
| v. | (Super. Ct. No. 30-2009-00124839) |
| JAMES P. BALDWIN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Franz E. Miller, Judge. Reversed and remanded with directions.

Brown Rudnick, Ronald Rus, Joel Miliband, Randall A. Smith and Justin S. Morgan for Plaintiff and Appellant.

Broker & Associates and Jeffrey W. Broker; Matthews Law Firm, Inc. and Arturo E. Matthews, Jr., for Defendant and Respondent.

\*　　　\*　　　\*

Respondent James P. Baldwin (Baldwin), a prominent real estate developer, is no stranger to the complicated world of business entity structuring. Over the course of his lifetime, he has formed and held interest in hundreds of corporations, partnerships and limited liability companies. This appeal concerns one of those limited liability companies, JPB Investments LLC (JPBI).

Appellant Curci Investments, LLC (Curci) sought to add JPBI as a judgment debtor on a multi-million dollar judgment it had against Baldwin personally. Curci asserted Baldwin held virtually all the interest in JPBI and controlled its actions, and Baldwin appeared to be using JPBI as a personal bank account. Curci argued, under these circumstances, it would be in the interest of justice to disregard the separate nature of JPBI and allow Curci to access JPBI's assets to satisfy the judgment against Baldwin.

Citing *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510 (*Postal Instant Press*), the court denied Curci's motion based on its belief the relief sought by Curci, commonly known as reverse veil piercing, is not available in California.

On appeal, Curci asserts *Postal Instant Press* is distinguishable, and urges us to conclude reverse veil piercing is available in California and appropriate in this case.

We agree *Postal Instant Press* is distinguishable, and conclude reverse veil piercing is possible under these circumstances. Therefore, we will reverse and remand for the court to make a factual determination as to whether JPBI's veil should be pierced.

## FACTS AND PROCEDURAL HISTORY

In January 2004, Baldwin formed JPBI, a Delaware limited liability company, for the exclusive purpose of "hold[ing] and invest[ing] [Baldwin and his wife's] cash balances." JPBI has two members, Baldwin with a 99 percent member interest and his wife with a one percent member interest. Baldwin is a manager and the chief executive officer (CEO) of the company. In these roles, and given his member interest, Baldwin determines when, if at all, JPBI makes monetary distributions to its members—i.e., Baldwin and his wife.

2

Two years after forming JPBI, Baldwin, individually, borrowed $5.5 million from Curci's predecessor in interest. The loan was memorialized in a promissory note executed by Baldwin and the managing member of Curci's predecessor (the Curci note). In the Curci note, Baldwin agreed to pay back the principal amount of the loan, with interest, by January 2009. Curci was assigned the lender's interest in the Curci note shortly after it was executed.

One month after executing the Curci note, Baldwin settled eight family trusts to provide for his grandchildren during and after their college years (the family trusts). Baldwin's children are the designated trustees. At least one of his sons, however, is unaware of the family trusts despite his signature on the trust documents.

Not long after the family trusts were settled, JPBI loaned a total of approximately $42.6 million (the family notes) to three general partnerships (the family partnerships) formed by Baldwin for estate planning purposes. Because the partners of the family partnerships are various combinations of the family trusts, certain of Baldwin's children signed the family notes in their capacity as trustees. Baldwin signed the family notes in his capacity as manager of JPBI. Each family note indicated the principal amount of the loan was to be repaid by July 2015. Although all the family notes are in favor of JPBI, Baldwin and his wife list them as "Notes Receivable" on their personal financial statements.

When the Curci note came due in January 2009, Baldwin had not made any payments. Curci filed a lawsuit against him to recover the amount owed. Not long thereafter, the parties entered into a court-approved stipulation establishing a payment schedule for Baldwin to avoid entry of judgment. About a year later, the court approved an amended stipulation that modified the payment schedule due to Baldwin's continued failure to make the agreed upon payments.

Baldwin ultimately failed to make the agreed upon payments, so Curci sought entry of judgment against him. In October 2012, the court entered judgment in

3

favor of Curci and against Baldwin in the amount of approximately $7.2 million, including prejudgment interest and attorney fees and costs.

In the year after entry of judgment, Curci propounded extensive post-judgment discovery requests aimed at understanding the nature, extent and location of Baldwin's personal assets. Baldwin did not timely respond to the discovery, and Curci filed a motion to compel. Though the motion was moot by the time it was heard, the trial court awarded sanctions against Baldwin.

As of February 2014, no payments had been made on the family notes. Baldwin, as manager of JPBI and for reasons unexplained, chose to execute amendments to the family notes to extend their terms by five years—to July 2020. No consideration was provided in exchange for the extensions. A few days later, Baldwin responded to a discovery request made by Curci one year earlier. Among the documents he produced were the family notes, including the five-year payment extensions.

Based on Baldwin's discovery responses, and Baldwin's failure to pay any of the judgment, Curci filed a motion seeking charging orders against 36 business entities in which Baldwin had an interest. Among those entities was JPBI. The court granted Curci's motion in August 2014. From and after that date, any monetary distributions made by JPBI to Baldwin, in his capacity as a member, were ordered to be paid to Curci instead.

Curci has received no money as a result of the charging order. Although Baldwin caused JPBI to distribute approximately $178 million to him and his wife, as members, between 2006 and 2012, not a single distribution has been made since the October 2012 entry of judgment on the Curci note. Also, there have been no payments made by the family partnerships to JPBI on the family notes.

In June 2015, Curci filed a motion to add JPBI as a judgment debtor pursuant to Code of Civil Procedure section 187. Curci based its motion on the outside reverse veil piercing doctrine. It argued that JPBI was Baldwin's alter ego, that Baldwin

4

was using JPBI to avoid paying the judgment and that an unjust result would occur unless JPBI's assets could be used to satisfy Baldwin's personal debt. Baldwin did not initially oppose the motion.

The court issued a tentative ruling denying Curci's motion based on *Postal Instant Press*. Following additional briefing from the parties on that issue, and a hearing, the court adopted its tentative ruling as its final decision. Because it believed outside reverse veil piercing was not viable in California, it did not make any factual findings related to Curci's arguments thereunder. Curci timely appealed.

## DISCUSSION

The question presented is whether reverse piercing of the corporate veil may be applied under the circumstances of this case, giving Curci the ability to reach JPBI's assets by adding it as a judgment debtor. Curci contends the facts of this case justify making such a remedy available, and argues that neither the decision in *Postal Instant Press*, nor state statutory law, preclude such a result. Baldwin disagrees, asserting that *Postal Instant Press* established a broad and all-encompassing rule of no reverse piercing in California, and, alternatively, that Corporations Code section 17705.03 provides the sole remedy available to Curci vis-à-vis JPBI.[1] For the reasons explained below, we agree with Curci and find remand appropriate to allow the court to make the factual determination of whether the facts in this case justify piercing JPBI's veil.

Pursuant to Code of Civil Procedure section 187, "a trial court has jurisdiction to modify a judgment to add additional judgment debtors." (*McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 752.) Granting or

---

[1] Curci asks us to take judicial notice of a stipulation signed by Baldwin in a separate case currently pending in Superior Court of Los Angeles County. Curci claims that stipulation demonstrates Baldwin's stance on reverse piercing in this case is "disingenuous." We deny the request, because the issue before us is a pure question of law.

5

denying a motion to add a judgment debtor lies within the discretion of the trial court, and we typically review that decision for substantial evidence. (*Id.* at pp. 751-752.) Here, however, because the issue before us is one of law, our review is de novo. (See *In re Martinez* (2012) 210 Cal.App.4th 800, 815.)

To provide background and framework for our discussion of "reverse piercing," we first briefly touch on the well-established alter ego doctrine—i.e. traditional veil piercing. Ordinarily a corporation is considered a separate legal entity, distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*).) The same is true of a limited liability company (LLC) and its members and managers. (Corp. Code, §§ 17701.04, 17701.05, 17703.04, subd. (b).)

That legal separation may be disregarded by the courts "when [a corporation or LLC] is used [by one or more individuals] to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 538; see Corp. Code, § 17703.04, subd. (b) [alter ego doctrine applicable to LLC's].) In those situations, the corporation's or LLC's actions will be deemed "to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.]" (*Sonora Diamond,* at p. 538.)

"The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 538.) As an equitable doctrine, its "essence . . . is that justice be done." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301 (*Mesler*).) Before the alter ego doctrine will be invoked in California, two conditions generally must be met.

"First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and

6

the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 538.)  While courts have developed a list of factors that may be analyzed in making these determinations, "[t]here is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." (*Mesler*, *supra*, 39 Cal.3d at p. 300.)

Reverse veil piercing is similar to traditional veil piercing in that when the ends of justice so require, a court will disregard the separation between an individual and a business entity.  (See generally Acceptance and Application of Reverse Veil-Piercing— Third-Party Claimant (2005) 2 A.L.R.6th 195, § 2.)  But, the two serve unique purposes and are used in different contexts.  Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider.

Outside reverse veil piercing arises when the request for piercing comes from a third party outside the targeted business entity.  (See *In re Phillips* (Colo. 2006) 139 P.3d 639, 644-645 (*In re Phillips*).)  As outside reverse piercing has evolved, a growing majority of courts across the country have adopted it as a potential equitable remedy.  (See Annot., Acceptance and Application of Reverse Veil-Piercing—Third-Party Claimant, *supra*, 2 A.L.R.6th 195, § 4.)  Its application, however, varies due to the different fact-driven analyses employed to determine whether piercing should occur in a given case.  Some courts apply the same "test" used in traditional reverse piercing cases (see, e.g., *M.J. v. Wisan* (2016) 371 P.3d 21, 36 [Utah] (*Wisan*)), while others have adopted a variant which, for example, adds additional factors aimed at addressing concerns unique to the reverse piercing context (see, e.g., *C.F. Trust, Inc. v. First Flight Limited Partnership* (2003) 580 S.E.2d 806, 811 (*C.F. Trust, Inc.*)).

Turning specifically to California case law, another panel of this court addressed outside reverse piercing in *Postal Instant Press*, *supra*, 162 Cal.App.4th at p.

7

1510.  In that case, Postal Instant Press (PIP) obtained an $80,000 judgment against an individual.  (*Id*. at p. 1514.)  PIP then sought to amend the judgment to add as a judgment debtor, a corporation in which the debtor formerly held shares.  (*Id*. at pp. 1514-1515.)

This court reversed the trial court's order amending the judgment, based on the conclusion "a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability."  (*Postal Instant Press*, *supra*, 162 Cal.App.4th at pp. 1512-1513.)  In reaching that conclusion, the court echoed concerns expressed by non-California courts about making outside reverse veil piercing available with respect to corporations.  (*Id*. at pp. 1519-1521.)  Among those concerns were allowing judgment creditors to bypass standard judgment collection procedures, harming innocent shareholders and corporate creditors, and using an equitable remedy in situations where legal theories or legal remedies are available.  (*Id*. at p. 1513.)

*Postal Instant Press* does not preclude application of outside reverse veil piercing in this case for several reasons.  To begin with, Curci seeks to disregard the separate status of an LLC, not a corporation.  The court's decision *Postal Instant Press* was expressly limited to corporations.  (*Postal Instant Press*, *supra*, 162 Cal.App.4th at p. 1513.)

In addition, the different facts before us, as well as the nature of LLC's, do not present the concerns identified in *Postal Instant Press*.  Baldwin, the judgment debtor, holds a 99 percent interest in JPBI.  His wife holds the remaining one percent interest, but she is also liable for the debt owed to Curci.  (See Family Code, § 910 [community estate generally liable for debt incurred by either spouse before or during marriage].)  There simply is no "innocent" member of JPBI that could be affected by reverse piercing here.  (Compare *Postal Instant Press*, *supra*, 162 Cal.App.4th at p. 1520 ["'[T]o the extent that the corporation has other non-culpable shareholders, they obviously will be prejudiced if the corporation's assets can be attached directly.'"].)

8

As for the concern about judgment creditors "bypass[ing] normal judgment collection procedures" (*Postal Instant Press*, *supra*, 162 Cal.App.4th at p. 1513), a creditor does not have the same options against a member of an LLC as it has against a shareholder of a corporation. When the debtor is a shareholder, the creditor may step straight into the shoes of the debtor. It may acquire the shares and, thereafter, "have whatever rights the shareholder had in the corporation," including the right to dividends, to vote, and to sell the shares. (*Id.* at p. 1522.)

In stark contrast, if the debtor is a member of an LLC, the creditor may only obtain a charging order against distributions made to the member. (Corp. Code, § 17705.03.) The debtor remains a member of the LLC with all the same rights to manage and control the LLC, including, in Baldwin's case, the right to decide when distributions to members are made, if ever. (Corp. Code, §§ 17704.07, 17705.02, 17705.03.)

We are equally unconcerned about reverse veil piercing being used when legal remedies are available. Although legal remedies—e.g., conversion, fraudulent transfer—may be available in many cases, thereby precluding reverse veil piercing, it is precisely the rare situations in which they are not that reverse piercing should deliver justice. Plus, requiring a creditor wishing to invoke the doctrine to demonstrate the absence of a plain, speedy, and adequate remedy at law would protect against reverse piercing being used to bypass legal remedies. (See *Wisan*, *supra*, 371 P.3d at p. 36; *In re Phillips*, *supra*, 139 P.3d at p. 647; *C.F. Trust*, *Inc.*, *supra*, 580 S.E.2d at p. 811.)

Baldwin asserts Corporations Code section 17705.03 preempts us from making reverse piercing available vis-à-vis an LLC because it provides the sole remedy creditors have against a debtor who has a member interest in an LLC. But, that statute is not as all-encompassing as Baldwin suggests. It more narrowly provides a charging order levying distributions from the LLC to the debtor member is the exclusive remedy by which a judgment creditor may "satisfy the judgment *from the judgment debtor's transferable interest*." (Corp. Code, § 17705.03, subd. (f), italics added.)

9

Reverse veil piercing is a means of reaching the LLC's assets, not the debtor's transferable interest in the LLC. That Corporations Code section 17705.03 does not preclude reverse piercing is underscored by the drafters' comments to the Revised Uniform Limited Liability Company Act, from which the statute was adopted without substantive change. (Stats. 2012, ch. 419.) Those comments state the charging provisions are "not intended to prevent a court from effecting a 'reverse pierce' where appropriate." (West's U. Laws Ann. (2017) U. Limited Liability Co. Act 2013, § 503.)

The case before us presents a situation where reverse veil piercing might well be appropriate. Curci has been attempting to collect on a judgment for nearly half a decade, frustrated by Baldwin's nonresponsiveness and claimed lack of knowledge concerning his own personal assets and the web of business entities in which he has an interest. Although the formation of JPBI predates the underlying judgment, its purpose has always remained the same—to serve as a vehicle for holding and investing Baldwin's money.

With Baldwin's possession of near complete interest in JPBI, and his roles as CEO and managing member, Baldwin effectively has complete control over what JPBI does and does not do, including whether it makes any disbursements to its members (he & his wife). Since the time judgment was entered in Curci's favor, Baldwin has used that power to extend the payback date on loans made to ultimately benefit his grandchildren (loans on which not a single cent has been repaid), and to cease making distributions to JPBI's himself and his wife, despite having made $178 million in such distributions in the six years leading up to the judgment.

For all of these reasons, we conclude reverse veil piercing may be available in this case. However, we express no opinion as to whether JPBI's veil should actually be pierced. Instead, we remand the matter for the trial court to engage in the required fact-driven analysis in the first instance. As with traditional veil piercing, there is no precise litmus test. (See *Mesler*, *supra*, 39 Cal.3d at p. 300.) Rather, the key is whether

10

the ends of justice require disregarding the separate nature of JPBI under the circumstances.  (See *ibid*.)  In making that determination, the trial court should, at minimum, evaluate the same factors as are employed in a traditional veil piercing case, as well as whether Curci has any plain, speedy, and adequate remedy at law.  (See, e.g., *Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 538-539 [listing veil piercing factors].)

## DISPOSITION

The order denying Curci's motion to amend the judgment is reversed, and the matter is remanded with directions to the trial court to consider whether the circumstances of this case justify piercing the veil of JPBI and adding it as a judgment debtor to the judgment against Baldwin.  Curci shall recover its costs on appeal.


_____
THOMPSON, J.

WE CONCUR:


_____
BEDSWORTH, ACTING P. J.


_____
ARONSON, J.

11